Case 4:21-cv-03404   Document 54   Filed on 07/11/24 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
July 11, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTHONY CASH § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 4:21-cv-3404 |
| § | |
| § | |
| HSBC BANK USA, NATIONAL § | |
| ASSOCIATION AS INDENTURE TRUSTEE § | |
| OF THE FIELDSTONE MORTGAGE § | |
| INVESTMENT TRUST, SERIES 2005-3 AND § | |
| PHH MORTGAGE CORPORATION, § | |
| § | |
| *Defendant* § | |

## ORDER

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff Anthony Cash ("Plaintiff" or "Cash") (Doc. No. 44). Defendants HSBC Bank USA, National Association as Indenture Trustee of the Fieldstone Mortgage Investment Trust, Series 2005-3 ("HSBC") and PHH Mortgage Corporation ("PHH") (collectively "Defendants") filed a response in opposition. (Doc. No. 53). Also pending before the Court is Defendants' Motion for Partial Summary Judgment (Doc. No. 40), to which Plaintiff did not file a response. Upon considering the briefings, applicable law, and competent summary judgment evidence, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 44) and GRANTS Defendants' Motion for Partial Summary Judgment (Doc. No. 40).

### I.   Background

Plaintiff filed this lawsuit seeking to prevent foreclosure of the property located at 19318 County Village Drive, Spring, Texas 77388 (the "Property"). In August 2005, Plaintiff obtained a

loan in the amount of $187,400.00 from Fieldstone Mortgage Company ("Fieldstone") in order to purchase the Property. (Doc. No. 28 at 2). Cash signed an Adjustable Rate Note and granted the lender a lien on the Property by signing a Deed of Trust. The Deed of Trust was later publicly recorded.

Thereafter, in December 2011, Fieldstone assigned the Deed of Trust to HSBC as Trustee. PHH currently services the Loan on behalf of HSBC as Trustee. PHH's predecessor in interest was a company Ocwen Loan Servicing, LLC ("Ocwen").

On February 1, 2012, Cash appears to have executed a Warranty Deed, which granted, sold, or conveyed all of his interest in the Property to Property Resolutions. Property Resolutions filed the Warranty Deed with the County Clerk of Harris County, Texas, on February 2, 2012. (Doc. No. 53-1 at 63). The Warranty Deed contains Cash's signature. Defendants maintain that Cash executed the Warranty Deed without providing notice to PHH (or, it appears, Ocwen or HSBC). Defendant's record custodian Gina Feezer testified that the Loan Records for the mortgage do not contain any document reflecting a notification by Plaintiff regarding this transfer. (Doc. No. 53, Ex. A at 3).

By contrast, Cash appears to deny that any sale or conveyance of the Property to Property Resolutions ever occurred. Cash contends that "Plaintiff had not sold the property but had attempted to seek help in getting a modification. He had been turned down initially by HSBC Bank USA's servicer Ocwen when trying to get a modification. Plaintiff approached Property Resolution for help in trying to get a modification" (Doc. No. 29 at 3). Plaintiff further alleges that "No consideration was ever given to Plaintiff by Marty Hatcher, who Plaintiff understood was the

owner of Property Resolutions, for the sale of the property and the document filed by Property Resolution was and is fraudulent."[1] (*Id.*).

Regardless of what exactly happened between Cash and Property Resolutions, which is not a party to this case, Cash admits that around this time period (early 2012), he became delinquent in payments to HSBC. (Doc. No 29 at 3). Later, in February of 2013, Cash entered into a Loan Modification Agreement. Pursuant to this agreement, Cash agreed, among other things, that: (1) the terms and conditions of the Loan Documents remain in full force and effect, (2) the loan modification was contingent on "clear title" to the Property and "if it is discovered at any time that title to the property is not clear, the Ocwen shall have the right to deem the instant settlement agreement null and void as if it never existed and the parties shall be restored to their original position," and (3) Cash would be declared in default if he sold or conveyed "any interest in the Property without Ocwen's prior written consent." (Doc. No. 28, Ex. F).

On or about August 24, 2021, Cash defaulted on the mortgage by failing to make timely payments and PHH sent him a notice letter on this date. (Doc. No. 53, Ex. A at 4). In Plaintiff's Original Petition, Plaintiff acknowledges that he received this letter on August 30, 2021 from PHH notifying him that his loan was in default and the Property would be in foreclosure. (Doc. No. 1-5 at 5). On the same day, he received another letter providing him the opportunity to dispute the debt within 30 days of receipt of the letter. (*Id.*). Plaintiff alleges that at this time, he began to market the Property and reach out to companies such as Zillow to try to sell the Property before foreclosure. (Doc No. 1-5 at 4). Plaintiff acknowledges that on September 2, 2021, Defendants

---

[1] In his motion for summary judgment, Cash attached an email allegedly sent by Marty Hatcher. The email says the following: "Mr. Cash, Per our conversation of 2/1/2012, Property Resolutions agrees to terminate any agreements made on 2/1/2012 if Ocwen agrees to extend you a workout on 2/2/2012. After 2/2/2012, we will assume no workout was reached and proceed with the property acquisition as planned." (45-3, at 54).

3

filed the Notice of Trustee Sale and he discovered that the Property was placed on the foreclosure role for October 5, 2021. (*Id.* at 4, 6).

Defendant's record custodian Gina Feezer testified that the Loan Records for the mortgage do not contain any documentation that Cash applied for loan relief between August 24, 2021 and October 5, 2021, nor do the records indicate that Cash requested verification of amount of the mortgage debt between August 24, 2021 and October 5, 2021. (*Id.*). Thus, there is no evidence that Plaintiff applied for further loan relief with Defendants or requested verification of debt.

Plaintiff then filed this lawsuit in Texas state court on October 1, 2021. Plaintiff alleges that PHH and HSBC failed to provide him with pre-foreclosure notices, including proper notice of sale. Plaintiff asserts claims for breach of contract, violations of the Texas Property Code, Fair Debt Collection Practices Act, Texas Debt Collection Act, and Truth in Lending Act. Plaintiff also sought injunctive relief to preclude foreclosure that was set to take place four days later.

On October 4, 2021, the state court issued a temporary restraining order ("TRO") that ordered Defendants to refrain from conducting the foreclosure sale that was set to take place on October 5, 2021. Notwithstanding the TRO, the foreclosure sale went forward on October 5, 2021, and the Property was sold to a third party, Modern T Real Estate LLC (the "Foreclosure Sale"). Defendants allege that the TRO is void because of Plaintiff's alleged fraudulent transfer to Property Resolutions and because Plaintiff failed to properly serve Defendants with the TRO before the Foreclosure Sale. (Doc. No. 28). As a result of the Foreclosure Sale, the mortgage loan was paid off (Doc. No. 40 at 5), and the sum of approximately $72,465.84 in surplus funds remains after the Foreclosure Sale.

After the TRO was issued and the Foreclosure Sale had occurred, Defendants promptly removed the action to this Court. Defendants also countersued for fraud, wrongful injunction, and malicious prosecution. (Doc. No. 28).

Through several amendments to the Court's original Scheduling Order, the dispositive motion deadline was ultimately extended to July 31, 2023, and responses to dispositive motions were due by August 21, 2023, pursuant to Court Order. (Doc. No. 39). Defendants timely filed their Motion for Partial Summary Judgment on July 31, 2023. (Doc. No. 40). Plaintiff did not file his own dispositive motion by July 31, 2023. Similarly, Plaintiff did not timely file a response to Defendants' Dispositive Motion by the response deadline of August 21, 2023. Rather, Plaintiff filed his own Motion for Summary Judgment (Doc. No. 44) on September 25, 2023. By Court Order, the Court excused Defendants from responding to Plaintiffs' Summary Judgment until further notice. (Doc. No. 47).

In March of 2024, the Court granted each party leave to respond to the other's summary judgment motion. The Court ordered that these responses be filed by April 15, 2024. Accordingly, Defendants responded to Plaintiff's Motion for Summary Judgment on that date. (Doc. No. 53). Plaintiff, however, failed to respond yet again, and April 15 has long since passed.

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

Local Rules 7.3 and 7.4 of the Southern District of Texas state that a response to a motion will be submitted 21 days after filing. Under Local Rule 7.4, a failure to respond will be taken "as representation of no opposition." *See* Local Rule LR7.4. Furthermore, Rule 7.4(a) plainly states that such responses must be filed by the submission date. *Id.*

The Fifth Circuit, however, has explained that "although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." *John v. Louisiana*, 757 F.2d 698, 707–09 (5th Cir. 1986). A non-movant's failure to respond to a motion for summary judgment does not entitle the movant to summary judgment. *Retzlaff v. de la Vina*, 606 F.Supp.2d 654, 656 (S.D. Tex. 2009) (citing *Eversley v. MBank Dallas*,

843 F.2d 172, 174 (5th Cir. 1988)). Instead, a court may accept the movant's evidence as undisputed and may enter a judgment in the movant's favor if summary judgment evidence establishes a *prima facie* showing of the movant's entitlement to judgment. *Id.* Therefore, a dismissal pursuant to the local rules based solely on Plaintiff's failure to respond to Defendant's Motion for Summary Judgment would be improper. Accordingly, the Court will consider Defendants' evidence to be undisputed and address the merits of Defendant's arguments from its motion.

### III. Evidentiary Objections

The Court first must address Defendants' evidentiary objections. Defendants object to Plaintiff's "blunderbuss" of summary judgment exhibits. (Doc. No. 53 at 16). Defendants object to Plaintiff's more than 350-page-long appendix. (Doc. No. 45). It largely contains legal pleadings from this action and a three-page affidavit by Mr. Cash setting out his version of certain facts. (Doc. No. 45 at 46–52). The other pieces of purported evidence are, Defendants argue, unauthenticated—whether by affidavit, declaration, or otherwise. Defendants argue that "[u]nauthenticated documents are improper as summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)).

Additionally, Defendants object because Plaintiff's brief "provides only the most minimal, if any, identification of which specific pages [of the appendix] purport to support Plaintiff's summary judgment arguments." (Doc. No. 53 at 16). Since Plaintiff's brief does not identify the supporting evidence, and that alleged evidence is unauthenticated, Defendants object that Plaintiff's arguments are unsupported by evidence in the record and do not provide a basis for summary judgment. "Needless to say, unsubstantiated assertions are not competent summary

judgment evidence." *Ragas*, 136 F.3d at 458 (citing *Celotex Corp.*, 477 U.S. at 324). *See Mendez v. Deutsche Bank Nat'l Trust Co.*, No. 7:16-CV-563, 2017 WL 2992450, at *2 (S.D. Tex. June 1, 2017) (movant must establish "'beyond peradventure all of the essential elements'" to warrant judgment in its favor) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002)).

Plaintiff did not respond to Defendants' objections. As stated above, a failure to respond is taken as a representation of no objection under the Court's local rules. Furthermore, the Court finds Defendants' arguments to be meritorious. Plaintiff's purported evidence is unauthenticated, repetitive, duplicative of the record, and unidentified in Plaintiff's motion. In fact, when Plaintiff's motion discusses the purported summary judgment evidence, the motion merely states:

> In support of his Motion, Plaintiff includes evidence in the attached appendix, which incorporated by reference into the motion. The motion for summary judgment is based on the following evidence.
>     a. Document which are verified which establish the court's rulings on the temporary restraining order.
>     b. Electronically store [sic] information, which are verified as authentic, establish the Fact that plaintiff never sold the property.
>     c. Affidavits which show plaintiff filed with the property record his response to the fraudulent deed.

(Doc. No. 44 at 12). Setting aside the fact that this paragraph fails to cite any page number or describe the documents with any detail, the mere fact that counsel labels a document as "verified as authentic" does not make it so. Therefore, the Court grants Defendant's objections to Plaintiff's summary judgment "evidence," and the Court will not consider the appendix.[2]

---

[2] Though appendix is a mess of documents, it does contain several copies of what appears to be an affidavit by Cash. While it is not filed in response to Defendants' motion, the Court will nonetheless consider it. Having done so, however, the Court finds that its contents are not pertinent or relevant to the present case. This is because, upon further investigation, the affidavit is stamped with the docket number of another case, *Cash v. HSBC Bank USA*, 4:19-cv-3326. This separate case involved the Property and was dismissed by Judge Hughes in February 2021, several months before the Foreclosure Sale here. Since Plaintiff presents the same affidavit here as he did in that prior case, and since the events giving rise to this case occurred well after that case was dismissed, the affidavit does not shed light on issues pending here since the facts it discusses took place in or before 2018.

8

## IV. Analysis

As summarized above, the Court has pending before it two motions for summary judgment: one filed by Plaintiff, to which Defendants have responded, and one filed by Defendants, to which Plaintiff did not respond. Plaintiff's motion for summary judgment asks that the Court find that he is entitled to judgement as a matter of law on all of his claims; it does not move for summary judgment on Defendants' counterclaims for fraud, wrongful injunction, and malicious prosecution. Defendants' motion also exclusively addresses Plaintiffs' claims and asks that the Court find no genuine issue of material fact supporting those claims. Since neither motion addresses Defendant's counterclaims, those claims will remain unaffected by this order. This order shall address only Plaintiff's causes of action against Defendants and whether either party is entitled to judgment as a matter of law.

### Plaintiff's Motion for Summary Judgment

As explained above, the Court granted Defendants' objections to Plaintiff's summary judgment evidence, both because the objections were meritorious and because Plaintiff failed to respond to those objections. Without supporting evidence, Plaintiff's assertions in his brief are unsubstantiated and cannot be considered for summary judgment purposes. Plaintiff has not provided evidence supporting each element of his numerous claims. He has therefore failed to establish that there exists no genuine issue of material fact supporting his causes of action. As such, the Court does not find that Plaintiff has demonstrated he is entitled to judgment as a matter of law. The Court hereby DENIES Plaintiff's motion for summary judgment. (Doc. No. 44).

### Defendant's Motion for Summary Judgment

Plaintiff did not file a response to Defendant's motion for summary judgment. Following Fifth Circuit precedent and despite considering the Cash affidavit discussed above, the Court finds

9

Defendants' evidence to be undisputed. Therefore, it will address the merits of Defendant's arguments from its motion to determine whether Defendants are entitled to judgment as a matter of law on each of Plaintiff's claims.

### A. Section 51.002 of the Texas Property Code

Plaintiff alleges that Defendants violated Section 51.002 of the Texas Property Code by not sending him notice of the foreclosure sale. *See* (Doc. No. 1-5). The claim for violation of the Texas Property Code, however, fails as a matter of law, because Section 51.002 of the Texas Property Code does not provide Plaintiff with a private right of action. *See Carey v. Wells Fargo*, No. CV H-15-1666, 2016 WL 4246997, at *3 (S.D. Tex. Aug. 11, 2016); *Ashton v. BAC Home Loan Servicing, L.P.*, No. 4:13-cv-810, 2013 WL 3807756, at *2 (S.D. Tex. Jul. 19, 2013) ("This Court has not found any cases that interpret section 51.002 to establish an independent right of action for damages. The section also does not contain its own enforcement mechanism."). As such, the Court GRANTS Defendant's motion for summary judgment on this claim.

### B. Wrongful Foreclosure

Accordingly, courts have construed claims for violation of Section 51.002 as claims for wrongful foreclosure. *See Carey*, 2016 WL 4246997, at *3; *Anderson v. Nat'l City Mortg.*, No. 3:11-CV-1687-N, 2012 WL 612562, at *6 (N.D. Tex. Jan. 17, 2012); *Johnson v. Vericrest Fin., Inc.*, No. 3:09-CV-1260-M, 2010 WL 3464971, at *4 (N.D. Tex. Aug. 27, 2010); *Ashton*, 2013 WL 3807756, at *2; *Bittinger v. Wells Fargo Bank NA*, No. H–10–1745, 2011 WL 3568206, at *4 (S.D. Tex. Aug. 15, 2011). To state a wrongful foreclosure claim under Texas law, Plaintiff must plead: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *See Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253-56 (5th Cir. 2013); *Barcenas v. Fed. Home*

10

*Loan Mortg. Corp.*, No. H-12-2466, 2013 WL 286250, at *5 (S.D. Tex. Jan. 24, 2013) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.)).

i.  *Defect in the Foreclosure Proceeding*

Defendants argue that there is no evidence of the first element—a defect in the foreclosure proceeding. Plaintiff's original state court petition, which is still the live pleading in this action, alleges that the foreclosure was defective because Plaintiff failed to receive proper notice. (Doc. No. 1-5 at 6). Specifically, Plaintiff alleges "HSBC BANK USA through its representatives failed to provide twenty-one (21) days notice of the date and time of the Foreclosure by failing to comply with the terms of the deed of trust which required HSBC BANK USA to mail a copy of said notice to Plaintiff." (*Id.*). On the same page, however, Plaintiff admits that "HSBC BANK USA through its representatives sent a demand letter on August 25, 2021." (*Id.*). Plaintiff also acknowledges having received this letter on August 30, 2021. (*Id.*). He further admits that he knew the time and place of the Foreclosure Sale on September 2, 2021, when Defendants filed the Notice of Trustee Sale. (*Id.* at 4, 6).

Defendants therefore argue that Plaintiff's wrongful foreclosure action fails as a matter of law because he has shown no evidence of a defect in proceedings. Under Texas law, "[s]ervice of notice is complete when the notice is sent via certified mail. . . . There is no requirement that [a plaintiff actually] received the notice." *Martins v. BAC Home Loans Servicing*, L.P., 722 F.3d 249, 256 (citing Tex. Prop. Code § 51.002(e)). *See also Dixon v. Bank of New York Mellon*, No. 3:13-cv-4235-L, 2014 WL 2991742, at *7 (N.D. Tex. July 3, 2014); *Thompson v. Bank of Am., N.A.*, 13 F. Supp. 2d 636, 645-56 (N.D. Tex. 2014); *Warren v. Bank of Am., N.A.*, No. 3:13-cv-1135-M, 2013 WL 8177096, at *7 (N.D. Tex. Nov. 15, 2013) (The plaintiff's "allegation that he did not 'receive' the default or acceleration notices listed in § 51.002(d) could not plausibly entitle him to

relief because the Property Code imposes no such requirement."); *Wheeler v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 4:13-cv-364, 2013 WL 3965304, at *4 (S.D. Tex. Aug. 1, 2013) (granting motion to dismiss plaintiff's section 51.002(d) allegation that he did not receive notice of the foreclosure for failure to state a claim); *Gillespie v. BAC Home Loans Servicing, LP*, No. 4:11-cv-388-A, 2012 WL 1870923, at *5 (N.D. Tex. May 23, 2012) ("The mere allegation by plaintiffs that they did not receive notice does not show that [defendant] failed to comply with the statutory requirements."); *Falk v. Wells Fargo Bank*, No. 3:09-cv-678-B, 2011 WL 3702666, at *7 (N.D. Tex. Aug. 19, 2011) (service is complete upon depositing the notice of default and acceleration in the mail). Defendants argue that Plaintiff's claim for wrongful foreclosure based on an alleged default in notice fails as a matter of law because the undisputed evidence establishes that Defendants mailed the notice of default and acceleration well over thirty (30) days prior to the Foreclosure.

The Court agrees with Defendants that the undisputed evidence establishes that Defendants mailed the notice of default and acceleration well over thirty (30) days prior to the Foreclosure. Plaintiff has not demonstrated a genuine fact issue that Defendants' notice was defective. Moreover, he judicially admits that he received timely notice. As such, the Court hereby GRANTS Defendants' motion for summary judgment on this issue.

To the extent that Plaintiff relies on the October 4th TRO and his claims that Defendants failed to comply with it, that theory is unavailing to show a defect in the foreclosure proceedings. Plaintiff filed his petition *before* the TRO was issued. It does not raise this issue. Plaintiff never filed an amended petition to reflect this possible new theory of defect. As such, the live pleadings only allege defective notice as the basis for the wrongful foreclosure cause of action. There is no live pleading that alleges a violation of the TRO as the basis for wrongful foreclosure. Therefore,

while the Court certainly does not condone defying a TRO, any alleged defiance cannot support Plaintiff's cause of action here.[3]

> ii. *Grossly Inadequate Selling Price*

Although the Court already granted Defendants' motion for summary judgment on the first element—defect in the foreclosure proceeding—the Court would likewise grant it on the second element as well—a grossly inadequate selling price. For a wrongful foreclosure claim, there must be evidence of an irregularity that "must have caused or contributed to cause the property to be sold for a grossly inadequate price." *Barcenas*, 2013 WL 286250, at *5 (quoting *In re Keener*, 268 B.R. 912, 921 (N.D. Tex. 2001)). Under Texas law, "a grossly inadequate price would have to be so little as 'to shock a correct mind.'" *Martins*, 722 F.3d at 256 (quoting *FDIC v. Blanton*, 918 F.2d 524, 531-32 (5th Cir. 1991)). The Fifth Circuit has recognized that a selling price is not grossly inadequate under Texas law if the property sells for at least 60% of its fair market value. *See Ayres v. Parker*, No. SA-12- CV-621-XR, 2013 WL 4048328, at *8 (W.D. Tex. July 29, 2013).

Defendants argue, and the Court agrees, that Plaintiff is not entitled to summary judgment on his wrongful foreclosure claim because there is no genuine issue of material fact that the Property sold for a grossly inadequate price. According to the Harris Central Appraisal District's appraisal, the fair market value of the Property in 2021 was $290,679.00. (Doc. No. 53 Ex. D). The sale price of the Property at the Foreclosure Sale on October 5, 2021, was $300,000. (Doc. No. 53 at Ex. C). Using this evidence, the sale price at foreclosure was about 103.2% of the fair market value. The Court finds that the sale price was not grossly inadequate as a matter of law. The Court GRANTS Defendants' motion on this issue as well.

---

[3] The Court need not address the issue of whether the TRO is void due to Plaintiff's alleged fraud, as Defendants suggest.

## C. Statutory Debt Collection Claims

Plaintiff also brings claims against Defendants under the Federal Fair Debt Collection Practices Act (the "FDCPA") and the Texas Debt Collection Act (the "TDCA"). The "FDCPA and the TDCA are very similar," and "the same actions that are unlawful under the FDCPA are also unlawful under the TDCA." *Cox v. Hilco Receivables, LLC*, 726 F. Supp. 2d 659, 666–67 (N.D. Tex. 2010) (internal citations omitted). Defendants move for summary judgment on both of these claims.

### i. *FDCPA*

To survive summary judgment on his claim under the FDCPA, Plaintiff must raise a fact issue that (1) he is a "consumer" under that Act; (2) the alleged debt was entered into for personal, family or household purposes; (3) Defendants are "debt collector[s]" under the Act; and (4) Defendants engaged in an unfair or prohibited debt collection practice. *See, e.g., Rivera v. Nat. Check Process'g, LLC*, No. SA–10–CA–605–XR, 2011 WL 996340, at *2 (W.D. Tex. Mar. 17, 2011). The Court finds that Plaintiff is not entitled to summary judgment on his FDCPA claim because he provides no evidence of these elements.

For example, the third element requires that"[o]nly parties who meet the statutory definition of debt collector are subject to civil liability under the FDCPA." *Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114-TJW-CE, 2011 WL 1193027, at *2 (E.D. Tex. Mar. 7, 2011) (internal quotation marks omitted). The "legislative history of section 1692a(6) indicated conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208, *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985).[4]

---

[4] Moreover, many courts have held that foreclosing pursuant to a deed of trust equates to enforcing a security instrument, which is separate and distinct from collecting on an obligation to pay money. *See, e.g., Brown v. Morris*,

According to Defendants, they are not debt collectors under this Fifth Circuit precedent because they acquired the mortgage and began servicing it before the mortgage was in default. The Court agrees with the Defendants and finds that the undisputed evidence shows they are not debt collectors under the FDCPA as a matter of law. Accordingly, the Court GRANTS Defendants' summary judgment on this cause of action.

    ii.    *TDCA*

To demonstrate entitlement to relief under the TDCA, a plaintiff must prove the following elements: (1) the debt is a consumer debt, (2) the defendant is a debt collector, as defined under the TDCA, (3) the defendant committed a wrongful act in violation of the TDCA, (4) the wrongful act was committed against the plaintiff, and (5) the plaintiff was injured as a result of the defendant's wrongful act. *See* Tex. Fin. Code §§ 392.001-392.404.

Defendant maintains that Plaintiff's TDCA claim fails, because Plaintiff provides no evidence Defendants committed an act in violation of the TDCA. Plaintiff only alleges Defendants violated Chapter 392 of the Texas Finance Code but does not specify what part of the code Defendants allegedly violated. Chapter 392 of the Texas Finance Code contains a plethora of debt collection prohibitions. Each section requires different evidence to be shown for a violation to occur. Plaintiff has not specified what, if any, provisions of the TDCA have allegedly been violated and provides no evidence of such a violation. Additionally, Defendants argue that Plaintiff has not suffered any actual or foreseeable injury under the TDCA.

---

243 Fed. App. 31, 35 (5th Cir. 2007) (affirming jury's determination that initiating nonjudicial foreclosure did not constitute debt collection); *Sweet v. Wachovia Bank and Trust Co., N.A.*, No. Civ.A. 3:03-CV-1212-R, 2004 WL 1238180, at *2 (N.D. Tex. Feb. 26, 2004) (foreclosure proceedings are not debt collection under the FDCPA); *Castanon v. Wells Fargo Bank, N.A.*, No. 3:11-CV-03472-P, 2012 WL 3200869, at *3 (N.D. Tex. Jun. 22, 2012) (FDCPA claim failed because "foreclosure under a deed of trust is not a debt collection as defined in the FDCPA."); *Anderson v. CitiMortgage, Inc.*, No. 4:10-cv-398, 2011 WL 1113494, at *5 (E.D. Tex. March 24, 2011).

The Court finds that Defendants are entitled to summary judgment on Plaintiffs TDCA claims. Plaintiff has not identified, or provided evidence of, a violation of the TDCA. The Court also concludes that Plaintiff has not alleged or provided evidence of damages under the TDCA. To prove an action for violation of the TDCA, a plaintiff must prove that he suffered an actual, foreseeable injury due to the defendant's conduct. *See* Tex. Fin. Code § 392.403(a)(2); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). Here, Plaintiff provides only conclusory allegations that he suffered damages. These allegations fail to raise a fact issue in support of his TDCA claims given the lack of evidence. The Court hereby GRANTS Defendants' motion for summary judgment on this point.

### D. Truth in Lending Act

Defendants also move for summary judgment under the Truth in Lending Act ("TILA"). Section 1640(a) of TILA—the TILA provision creating a right of action for violation of section 1639f, among others—provides that "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person." 15 U.S.C. § 1640(a). The term "creditor" is defined as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement . . . .

15 U.S.C. § 1602(g) (emphasis added). Moreover, § 1641 states that "any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor *only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement.*"

15 U.S.C. § 1641 (emphasis added). Defendants argue that they do not constitute a "creditor" as defined in TILA because there is no evidence that either of them is the originating lender or that the note was initially payable to either of them. (Doc. No. 40 at 23). Additionally, Plaintiff has failed to allege which provision of TILA he beliefs that Defendants violated. As such, they argue that they cannot be liable for an alleged TILA violation.

The Court finds that Plaintiff has failed to raise a fact issue on his TILA claim against Defendants and that Defendants are entitled to summary judgment as a matter of law. *See, e.g., McZeal v. Ocwen Financial Corp.*, 252 F.3d 1355, No. 00-20817, 2001 WL 422375, at *1 (5th Cir. March 28, 2001) (assignee is not liable under TILA unless alleged violation is apparent on face of the note); *Vincent v. Money Store*, 736 F.3d 88, 108 (2d Cir. 2013) (holding assignee is not liable under TILA). Plaintiff failed to identify with any specificity what provision of TILA he believes Defendants violated and failed to provide evidence of any conduct by Defendants that he believes constitutes a violation. As it stands, there is no evidence that there was a violation of TILA (much less one that was apparent on the face of the note); as a result, there is therefore no evidence that Defendants may be held liable given TILA's dictates regarding assignees. The Court GRANTS Defendants' motion for summary judgment on this claim.

### E. Breach of Contract

Plaintiff's final cause of action against Defendants is for breach of contract. To establish a claim for breach of contract under Texas law, Plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). Defendants move for summary

judgment on this claim, arguing, *inter alia*, that Plaintiff cannot show Defendants breached as a matter of law.

Here, the Court agrees that there is no evidence that Defendants breached the Note or the Deed of Trust. The only breach Plaintiff alleges is an alleged lack of 30 days' notice to cure his default on the Mortgage. (Doc. No. 1-5 at 6). However, Plaintiff concedes that the demand letter was sent on August 25, 2021. (*Id.*). Moreover, Plaintiff concedes he received the letter "[o]n or about" August 30, 2021. (*Id.* at 5). The Sale occurred more than 30 days after this receipt, on October 5, 2021. (Doc. No. 40, Ex. C.) Therefore, Plaintiff has no evidence that Defendants breached the contract.

### F. Injunctive Relief and Attorney's Fees

Since Plaintiff's underlying claims fail as a matter of law, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's claims for injunctive relief and attorneys' fees.

### V. Conclusion

For the reasons above, upon considering the briefings, applicable law, and competent summary judgment evidence, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (Doc. No. 44) and GRANTS Defendants' Motion for Partial Summary Judgment (Doc. No. 40). Consequently, Plaintiff does not have any live claims against Defendants. Defendants' counterclaims remain unaffected by this order. The Court understands that at least one of Defendants' remaining counterclaims involves the alleged transfer of the Property to Property Resolutions in 2012. Defendants appear to believe that Plaintiff acted fraudulently, and Plaintiff appears to believe that Property Resolutions acted fraudulently. However, Property Resolutions is not a party to this case. Thus any claims against it must be brought in a different action.

The parties are ordered to file a status report by August 2, 2024. That report should include what is to be done with the funds in the Court's registry and whether the Defendants are going to proceed with their cross-actions, which are the only remaining live claims in the lawsuit.

Signed at Houston, Texas, this 11 day of July, 2024.

Andrew S. Hanen
United States District Judge